UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTORY ILSUNG, | Case No.  1:10-cv-02070-AWI-MJS (PC) |
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| ROBERT MOBERT, | **(ECF No. 49)** |
| Defendant. | **FOURTEEN DAY OBJECTION DEADLINE** |

I.    **PROCEDURAL HISTORY**

Plaintiff is a state prisoner proceeding *pro se* in this civil rights action pursuant to 42 U.S.C. § 1983. (ECF No. 1.) This matter proceeds against Defendant Mobert on Plaintiff's First and Eighth Amendment medical indifference and retaliation claims. (ECF No. 13.)

On May 1, 2014, Defendant filed a motion for summary judgment. (ECF No. 49.) Plaintiff filed an opposition on July 10, 2014. (ECF No. 54.) Defendant filed a reply on July 25, 2014. (ECF No. 57.) The parties' surreply and sur-sureply were filed on September 24 and 30, 2014, respectively. (ECF No. 68-69.) This matter is deemed submitted pursuant to Local Rule 230(l).

II.    **LEGAL STANDARD**

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Wash. Mut. Inc. v. United States, 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed R. Civ. P. 56(c)(1). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001).

Plaintiff bears the burden of proof at trial, and to prevail on summary judgment, he must affirmatively demonstrate that no reasonable trier of fact could find other than for him. Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). Defendants do not bear the burden of proof at trial and, in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case. In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence, Soremekun, 509 F.3d at 984, and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment. Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011).

2

III.    **FACTUAL SUMMARY**

    A.    **Facts Relating to Medical Indifference**

Plaintiff was diagnosed with renal failure and has been receiving dialysis treatments since February 2006. Plaintiff receives dialysis treatments three times a week.

During dialysis treatments, a machine filters Plaintiff's blood and removes excess waste and fluids from his body. An average person with working kidneys ingests about twelve cups of water a day. However, a dialysis patient is limited to four to six cups of fluid a day. Dialysis patients are regularly counseled by medical personnel to limit fluid intake.

Dialysis patients are instructed to limit fluid intake so as not to become overloaded with fluids they are incapable of eliminating. To assist in restricting fluid intake, patients are provided ice chips. By sucking on ice, dialysis patients are able to keep their mouth moist while restricting the overall amount of fluid consumed.

Intake of too much fluid can cause medical concerns including shortness of breath due to fluid in the lungs, added strain on the heart, increased blood pressure, and swelling of extremities. If too much fluid is consumed, more fluid will need to be removed during the dialysis treatment. Removing more fluid makes treatment more uncomfortable, and patients can experience drops in blood pressure, cramping, nausea, weakness, and fatigue, and may continue to feel dizzy and weak after treatment. If too much fluid is removed during dialysis, patients can experience symptoms of dehydration, including thirst, dry mouth, lightheadedness, cramping, nausea, restlessness, cold extremities, and rapid heartbeat.

During the relevant period, from June to September, 2009, Plaintiff had a valid

medical chrono, written by a medical professional, instructing prison staff to provide Plaintiff with sixteen ounces of ice chips three times a day. The medical chrono was provided to assist Plaintiff in limiting his fluid intake.

The remaining facts relating to the issue of whether Defendant withheld ice from Plaintiff are disputed.

### B.    Facts Relating to Retaliation

Nearly all the facts relating to Plaintiff's retaliation claims are contested. Plaintiff claims that Defendant retaliated against him for filing an administrative complaint against Defendant's for failure to provide Plaintiff ice. Among other things, Plaintiff asserts that Defendant continued to refuse to provide Plaintiff ice, refused to collect Plaintiff's laundry, and conducted numerous cell searches resulting in the confiscation of Plaintiff's property.

On July 3, 2009, Plaintiff alerted Defendant that he was going to file a complaint for Defendant's failure to provide ice. According to Plaintiff, starting on that date Defendant did not take his dirty sheets during weekly sheet exchange. Two days later, on July 5, 2009, Plaintiff filed a staff complaint against Defendant for failing to provide ice and not allowing Plaintiff to turn in his bed sheets during sheet exchange. Plaintiff claims that Defendant told him he was not collecting the laundry because he did not like the fact that Plaintiff wrote a complaint against him, and that he would be Plaintiff's "worst enemy."

Plaintiff contends that Defendant commenced a series of cell searches starting on the date he filed the complaint, July 5, 2009. During the searches Plaintiff claims that correctional officers confiscated his personal items without proper justification.

Plaintiff also contends that Defendant or Defendant's co-worker, Correctional

4

Officer Gillis, confiscated his lamp and fan, and broke his compact disc player and headphones. However, the fan was later returned. Plaintiff contends that Defendant told Gillis to search Plaintiff's cell after Plaintiff was transferred and Defendant was no longer in a position to search the cell. He also contends that the fan was authorized, and legally bought by Plaintiff, but wrongly confiscated for having a broken blade that no one else saw.

From the documentation provided, it is difficult to discern which cell searches were conducted, and what items were confiscated, by Defendant, rather than other correctional officers.

Plaintiff also asserts that other minor items were confiscated including food and dialysis supplement drinks, a blanket, clothing, writing paper, laundry bags, and other items. Plaintiff contends that the items were improperly confiscated as they were not a threat to institutional safety. Finally, Plaintiff complains that during cell searches Defendant would throw Plaintiff's personal items on the floor and make a larger mess than necessary.

While several cell searches were conducted, Plaintiff contends that he did not receive cell search receipts for most of them. Defendant, in his declaration, admits that he was provided notice that Plaintiff filed a staff complaint against him for failing to provide ice chips and not allowing him to turn in bedding. Defendant asserts that he never told Plaintiff that he refused to give him ice because he filed the staff complaint. Defendant contends that he never searched Plaintiff's cell based on a retaliatory motive for filing the complaint. If he confiscated anything from Plaintiff's cell, Defendant states he would have noted it in the cell search receipt and given a copy to Plaintiff. Defendant asserts that if he did search Plaintiff's cell, and if he did confiscate items, it was because

the items were contraband, in excess of the quantity permitted, or posed a threat to safety. If anything was broken during the cell search it would have been noted on the cell search receipt and an attempt would have been made to find replacement property. Defendant did not remember breaking any of Plaintiff's property.

Defendant also denied having ever refused to collect Plaintiff's sheets, or otherwise interfered with Plaintiff's attempt to get his clothes or laundry cleaned.

## IV.   ANALYSIS

### A.   Medical Indifference

Plaintiff has presented a claim for medical indifference. The government has an "obligation to provide medical care for those whom it is punishing by incarceration," and failure to meet that obligation can constitute an Eighth Amendment violation cognizable under § 1983. Estelle v. Gamble, 429 U.S. 97, 103-05, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). In order to prevail on an Eighth Amendment claim for inadequate medical care, a plaintiff must show "deliberate indifference" to his "serious medical needs." Id. at 104. This includes "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." Colwell v. Bannister, 763 F.3d 1060, 1066 (9th Cir. 2014) (citing Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir.  2012)).

To meet the objective element of the standard, a plaintiff must demonstrate the existence of a serious medical need. Estelle, 429 U.S. at 104. Such a need exists if failure to treat the injury or condition "could result in further significant injury" or cause "the unnecessary and wanton infliction of pain." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992). Indications that a plaintiff has a serious medical need include "[t]he existence of an

injury that a reasonable doctor or patient would find  important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." Colwell, 763 F.3d 1060, 1066 (9th Cir. 2014) (citing McGuckin, 974 F.2d at 1059-60)).

To show a prison official was deliberately indifferent under the subject element of the test, the Plaintiff must show (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. Colwell, 763 F.3d at 1066.  "Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (brackets omitted) (quoting Gibson, 290 F.3d at 1188). Mere indifference, negligence, or medical malpractice is not sufficient to support the claim. Broughton v. Cutter Labs., 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle v. Gamble, 429 U.S. 87, 105-06 (1976)).

### 1.    Parties' Arguments

Defendant argues that Plaintiff's medical indifference claim against him fails because (1) Plaintiff does not have a serious medical need for the treatment requested, and (2) that Plaintiff did not experience further harm as a result of not receiving ice. (ECF No. 49-1 at 9-11.) Defendant also submits evidence purporting to show that Defendant only failed to provide Plaintiff ice on the first morning Plaintiff was transferred

to his cell block, and even then, another officer provided Plaintiff ice later that same morning. (Id. at 4, ECF No. 49-5 at 2-3.)

Much of Plaintiff's argument focuses on contesting Defendant's evidence. Plaintiff asserts that on the first day that he was transferred to Defendant's unit, he respectfully explained that he had a chrono to receive ice. (ECF No. 54, Plaintiff's Decl. at ¶ 14.) He also reminded Defendant multiple times about the ice chrono, but Defendant did not provide him ice. (Id. at 31.) Plaintiff also asserts that Defendant would have known Plaintiff was diabetic because it was included on the language on his cell door, Defendant had to take Plaintiff to medical for his diabetes shot and check, and he fed Plaintiff a therapeutic renal diet meal with Plaintiff's name on it. (Id. at ¶ 15.) Plaintiff further declares that Defendant did not provide him ice chips at any time over the one hundred days Plaintiff was housed in Defendant's building. (Id. at ¶ 29.) Plaintiff alleges that because he did not receive ice chips, he took on too many fluids and developed the following symptoms:

> I started to become ill. It started with chest pains. I felt like there was a bear sitting on my chest. I was having difficulty breathing. I felt like I was drowning in a pool. I started having trouble sleeping. This was when I started sleeping in an upright position. I was constantly bedridden. I started having a hard time walking, and walking became more difficult. I began using a cane to help me walk and keep me from falling down. I had weakness in the legs. I had weakness in the arms. I lost all my energy. I felt sluggish. I started having pain in my head and severe headaches. I started having a swollen face. My body was also swollen. I began to have pain in my belly. I began to feel bloated. My vison became blurry. My blood pressure began to change. I started having numbness in my arms and legs. I had a tingling sensation there. I became frail…. My quality of life is horrible with these illnesses and they are getting worse.

(Id. at ¶ 29.) Based on the foregoing, Plaintiff alleges there are genuine issues of material fact that preclude summary judgment in Defendant's favor.

> **2.     Serious Medical Need For Ice**

8

Plaintiff's allegation that he suffers from diabetes is sufficient to allege a serious medical need. Jett, 439 F.3d at 1096 (a "serious medical need" may be shown by demonstrating that "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain'"); see also McGuckin, 974 F.2d at 1059-60. Plaintiff does not challenge that he was receiving certain treatments, including dialysis, for this condition. The issue is whether a failure to provide ice chips could be a failure of treatment that could result in unnecessary infliction of injury or pain.

Neither party contests that Plaintiff, as a dialysis patient, would experience painful and serious health complications if he ingested too many fluids. Further, the parties agree that ice was provided to assist dialysis patients in consuming less liquid. However, the parties disagree regarding whether providing ice is a medically necessary treatment to restrict fluids, or rather a comfort measure to overcome the feeling of dry mouth and the desire to drink excess fluids. In support of his argument that ice is a comfort measure, Defendant provides the declarations of M. Fritz and Dr. J. Metts. (ECF Nos. 49-6, 49-7.) Fritz, a chief executive nurse, directed the dialysis units at the prison. (Fritz Decl. at ¶ 2.) Fritz explains that inmates on dialysis are constantly reminded to restrict fluids. (Id. at ¶ 4.) Further, Fritz states that "If a doctor feels that an inmate needs help restricting his fluid intake, he might write a medical chrono or prescription for ice." (Id. at ¶ 5.)

Dr. Metts, Defendant's primary care provider at the prison, described how dialysis patients require special diets, and may require medications to keep their electrolytes and other metabolic biochemicals in balance. (Metts Decl. at ¶ 4.) Metts explained that dialysis patients should ingest about half as much liquids as a normal person, and are

sometimes provided ice chips to restrict fluid intake. However, Metts states "Dialysis patients do not have ice as a part of their treatment plan. Ice is not a treatment for dialysis patients, but a comfort measure to address the feeling of a dry mouth. If a dialysis patient does not have ice, he is still perfectly capable of regulating his fluid intake. Ice is not life sustaining and does not address a patient's nutritional needs. In short, dialysis patients do not have a medical need for ice." (Id. at ¶ 7.)

In his deposition testimony, Plaintiff acknowledges that he could rehydrate by drinking regular water on the days he was not provided ice. (ECF No. 49-4 at 13.) While he stated that ice was preferred, he admitted it was possible to rehydrate by taking sips of water. (Id. at 14.)

Plaintiff disputes Dr. Metts assertion that dialysis patients do not have a medical need for ice. (See ECF No. 54 at 64-65.) Plaintiff explains that ice was provided to limit his fluid intake, and that excessive fluids could cause serious medical complications, including death. (Id.)

The sworn opinion of Dr. Metts, a qualified expert in the area of physician's standard of care, is that ice is not a medically necessary treatment for dialysis. There is no competent opinion evidence to the contrary: Plaintiff is not qualified to render expert opinion on the subject. Plaintiff may not offer as evidence his own opinion on matters which require scientific, technical, or other specialized knowledge. Fed. R. Evid. 701(c), 702. Thus, Plaintiff's opinion on the issue cannot raise a genuine issue of material fact regarding the adequacy of medical care, even though contrary to the opinion of Dr. Metts.

Even if Plaintiff were qualified to express his opinion and it were found admissible, the outcome would not change. "A difference of opinion between a

physician and the prisoner - or between medical professionals - concerning what medical care is appropriate does not amount to deliberate indifference." Snow, 681 F.3d 978, 987 (9th Cir. 2012) (citing Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989)); Wilhelm, 680 F.3d at 1122-23 (citing Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986)). Rather, Plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health." Snow, 681 F.3d at 988 (citing Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996)) (internal quotation marks omitted). Plaintiff fails to allege facts demonstrating that being denied ice chips was medically unacceptable.

Plaintiff's belief that as a dialysis patient he had a medical need for ice is based on lay opinion and speculation. Plaintiff relies on the fact that the doctors did in fact instruct correctional officers to provide ice to some dialysis patients, Plaintiff included. However, all discussions focus on the medical need to restrict fluids, rather than the need to consume ice.

The Court acknowledges that Plaintiff's belief that he is medically entitled to ice is genuine and sincere. Even if Defendant did not provide ice Plaintiff was entitled to, Plaintiff has not shown through competent evidence that the failure constituted medically unacceptable care.  His unfilled request for palliative treatment is not a basis for a civil rights claim. Here, nothing suggests Defendant provided medically unacceptable care. Plaintiff's disagreement with treatment decisions is not a basis for an inadequate medical care claim unless the treatment chosen is medically unacceptable and in conscious disregard of an excessive risk to the prisoner's health. See Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981); Jackson v. McIntosh, 90 F.3d 330, 332

(9th Cir. 1996). Plaintiff makes no such showing here.

### 3.    Deliberately Indifference Response

To show a prison official was deliberately indifferent under the second element, Plaintiff must show (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. Colwell, 763 F.3d at 1066.   Defendant contends that Plaintiff has not shown that he was indifferent to Plaintiff's medical need because any harm or pain suffered by Plaintiff was caused by his consumption of too many fluids, not his failure to receive ice.

Plaintiff contends that he did not properly regulate his fluid intake when he was not provided ice, and suffered the painful effects associated with excess fluid intake by dialysis patients. Plaintiff's painful symptoms are not questioned.  However, Plaintiff has not shown that Defendant's indifference was the cause of his harm. Plaintiff's harm was caused by the intake of excess fluids. However, as noted, the Court has concluded that there was no serious medical need for ice.  Thus, even if it is assumed that Defendant consciously disregarded Plaintiff's medical chrono affording him ice, Plaintiff is not able to show that Defendant's inaction in this regard was the cause of his harm. Whether or not Plaintiff was provided ice did not determine whether he ingested excess fluid. It is clear that he had alternative means of keeping his mouth from becoming too dry and fo avoiding too much fluid intake.

In conclusion, Plaintiff has made no showing that Defendant knew Plaintiff faced a substantial risk of harm by not providing ice, and that Defendant' failure to provide ice was the source of his harm. Accordingly, Defendant's motion for summary judgment is granted with respect to Plaintiff's claim against Defendant on Plaintiff's deliberate indifference claim arising from the failure to provide ice chips as instructed by the

medical chrono.

Petitioner has not raised a genuine issue of material fact with regard to the need for ice or Defendant's deliberate indifference in not providing ice.

## B.   Retaliation

### 1.   Legal Standard – First Amendment Retaliation

In the prison context, a First Amendment retaliation claim has five elements: (1) that the plaintiff engaged in conduct protected by the First Amendment; (2) that defendant took adverse action against plaintiff; (3) that a causal connection exists between the protected conduct and the adverse action; (4) that the adverse action chilled the plaintiff's protected conduct or "would chill or silence a person of ordinary firmness from future First Amendment activities;" and (5) that defendant's retaliatory action did not advance legitimate correctional goals. Watison v. Carter, 668 F.3d 1108, 1114-1115 (9th Cir. 2012); Rhodes v. Robinson, 408 F.3d 559, 567-568 (9th Cir. 2005).

The first element can be satisfied by various activities. Filing a grievance or a civil rights legal action are protected actions under the First Amendment. Watison, 668 F.3d at 1114; Rhodes, 408 F.3d at 568; Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985).

The adverse action necessary to satisfy the second element need not be so serious as to amount to a constitutional violation.  Watison, 668 F.3d at 1114; Hines v. Gomez, 108 F.3d 265, 269 (9th Cir. 1997). Even "the mere threat of harm can be an adverse action . . . ." Brodheim v. Cry, 584 F.3d 1262, 1269-1270 (9th Cir. 2009).

The third element requires "a causal connection between the adverse action and the protected conduct," Watison, 668 F. 3d at 1114, and that the "protected conduct was 'the substantial or motivating factor behind the defendant's conduct.'"  Brodheim, 584 F.3d 1271 (9th Cir. 2009) (citing Sorrano's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314

13

(9th Cir. 1989)). Because it can be difficult to present direct evidence of a defendant's motive, "timing can properly be considered as circumstantial evidence of retaliatory intent." Watison, 668 F.3d at 1114 (citing Pratt v. Rowland, 65 F.3d 802, 808 (9th Cir. 1995)).  However, timing may also undermine a claim of retaliation, for instance, when the alleged retaliatory conduct takes place before the Plaintiff's exercise of his First Amendment rights. See Pratt, 65 F.3d at 808.

Fourth, the adverse action either chills plaintiff's own First Amendment exercise or would chill that of a person of ordinary firmness. Brodheim, 584 F.3d at 1269-1270; Rhodes, 408 F.3d at 568-569. The adverse action must result in more than de minimis harm to the inmate. See Watison, 668 F.3d at 1114 (finding that "a plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm that is more than minimal"). However, Plaintiff need not demonstrate that his First Amendment rights were totally "inhibited or suppressed" because "it would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity." Rhodes, 408 F.3d at 568-569 (citing Mendocino Envtl. Ctr. v. Mendocino Cnty., 192 F.3d 1283, 1300 (9th Cir. 1999). However, "insignificant retaliatory acts" are generally not actionable. Morris v. Powell, 449 F.3d 682, 685 (5th Cir. 2006); accord Walker v. Bowersox, 526 F.3d 1186, 1190 (8th Cir. 2008); see also, e.g., Ransom v. Aguirre, No. 1:12cv01343 2013 WL 398903, at *4 (E.D. Cal. Jan. 31, 2013) (noting that "not every allegedly adverse action is sufficient" to support a retaliation claim).

Finally, the fifth element requires the prisoner to affirmatively show that "the prison authorities' retaliatory action did not advance legitimate goals of the correctional

14

institution or was not tailored narrowly enough to achieve such goals." <u>Rizzo</u>, 778 F.2d at 532; <u>accord</u> <u>Watison</u>, 668 F.3d at 1114.

### 2.   Discussion

Many of the facts in this case, and particularly those surrounding whether the adverse actions were taken, are disputed by the parties. Accordingly, the Court shall determine whether summary judgment is appropriate considering the facts in the light most favorable to Plaintiff. <u>Comite de Jornaleros</u>, 657 F.3d at 942.

Plaintiff alleges that in response to his July 5, 2009 staff complaint, Defendant took retaliatory actions (and/or instructed other guards to take retaliatory actions), including not taking Plaintiffs dirty laundry, continuing to refuse to provide Plaintiff ice chips, and conducting cell searches that involved the confiscation and destruction of Plaintiff's property. The Court reviews each claim in turn.

### a.   Sheet Exchange

Plaintiff met the first element of retaliation for Defendant's failure to take his bed sheets during sheet exchange for about six weeks. Filing a grievance is a protected action under the First Amendment. <u>Watison</u>, 668 F.3d at 1114; <u>Rhodes</u>, 408 F.3d at 567.

Plaintiff also satisfied the second element. Defendant's refusing to take his laundry is an adverse action that would negatively affect Plaintiff's conditions of confinement.

Defendant asserts that Plaintiff cannot show the appropriate "causal connection between the adverse action and the protected conduct" required under the third element of the retaliation claim. <u>Watison</u>, 668 F. 3d at 1114. Specifically, Defendant argues that the complained of conduct occurred before the filing of the staff complaint, and therefore

the complaint could not have brought about the adverse action. It is unclear as to when the allegedly retaliatory actions were taken by Defendant. Plaintiff says the alleged failure to provide ice chip started on the date he was transferred to Defendant's unit.  It is not entirely clear when the other events, which reportedly occurred on multiple occasions, took place.

On July 5, 2009, Plaintiff submitted a staff complaint and an accommodation request claiming that Defendant was denying him ice chips and refusing to take his laundry. (Am. Compl. at 26, ECF No. 13.) Therefore it is clear the adverse action of not picking up laundry occurred before Plaintiff filed the staff complaint. However, Plaintiff alleges that that said retaliation started to occur on July 3, 2009, when Plaintiff verbally told Defendant he was going to file a staff complaint regarding the failure to provide ice.

Plaintiff has shown a genuine issue of material fact with regard to whether the failure to take Plaintiff's laundry was in response to Plaintiff's threat to file a staff complaint. Plaintiff has made a showing of a causal connection with regard to that claim.

Defendant asserts that his failure to take Plaintiff's laundry did not chill Plaintiff's right to First Amendment exercise and would not chill a person of ordinary firmness. Brodheim, 584 F.3d at 1269-1270; Rhodes, 408 F.3d at 568-569. Assuming that Defendant did not pick up Plaintiff's sheets for the period alleged, Plaintiff has not alleged facts indicating that continuing to use the sheets would chill the expression of an ordinary person. While sheets that have been slept on for over a month would not be considered clean, Plaintiff has alleged no facts suggesting that such a prolonged use of sheets was or would be so unacceptable as to negatively impact conditions of confinement and chilled the exercise of first amendment rights. For example, in Moore v. Sloss, 2008 U.S. Dist. LEXIS 17876 (E.D. Cal. Mar. 7, 2008), the court held that a

16

triable issue of fact remained when the defendant delivered plaintiff sheets covered in urine and semen in retaliation to plaintiff's actions. Plaintiff has not presented any claims of any comparable offensiveness or that the sheets were stained, malodorous, or otherwise unfit for use as in Moore.

In summary, Plaintiff has not raised triable issues of fact that the failure to exchange Plaintiff's sheets had a chilling effect on Plaintiff's First Amendment rights. See, e.g., Williams v. Miller, 2013 U.S. Dist. LEXIS 36336, 27-28 (N.D. Cal. 2013) (wearing soiled clothing for a short period of time did not cause a chilling effect on speech.)  The Court recommends that Defendant's motion for summary judgment be granted with regard to the laundry pickup retaliation claim.

b.    Failure to Provide Ice

Plaintiff met the first element of retaliation for the failure to provide ice as filing a grievance is a protected action under the First Amendment. Watison, 668 F.3d at 1114; Rhodes, 408 F.3d at 567.

Further, Plaintiff satisfied the second element by alleging an adverse action was taken in response to his taking that protected action. Plaintiff claims that Plaintiff denied him ice chips he was entitled to receive to assist with his medical condition. The failure to provide ice was an adverse action that could lead to Plaintiff suffering more pain and discomfort.

Defendant asserts again that Plaintiff cannot show the appropriate "causal connection between the adverse action and the protected conduct" as required under the third element of the retaliation claim. Watison, 668 F. 3d at 1114. Specifically, Defendant argues that the conduct of failing to provide ice occurred before the filing of the staff complaint, and therefore was not connected to the protected speech.

Plaintiff alleges that Defendant refused him ice from the first day he was transferred to Defendant's unit. The denial of ice was the predicate for his filing of the staff complaint, and therefore had to occur before Plaintiff filed the complaint. The Court disagrees with Defendant's argument that there is no causal connection. Plaintiff has established that there is a genuine issue of material fact regarding whether there was a causal connection between his filing the staff complaint and Defendant's retaliatory action of failing to provide ice.

Defendant admits that he did not provide Plaintiff ice on the first day he was in his unit based on confusion over the meaning of the medical chrono. However, Defendant admits that he was responsible for providing ice to Plaintiff. Based on Plaintiff's assertions that he told Defendant that he was entitled to ice, and that he intended to file a staff complaint against Defendant for not providing ice, there is a triable issue of fact that sometime shortly after Plaintiff's transfer to his unit, Defendant would have had knowledge that Plaintiff was entitled to ice and that Plaintiff was filing a staff complaint against him.

Plaintiff alleges that Defendant thereafter embarked upon a course of retaliatory actions in addition to not providing ice, including not exchanging Plaintiff's sheets and searching Plaintiff's cell and confiscating his property. "[T]iming can properly be considered as circumstantial evidence of retaliatory intent." Watison, 668 F.3d at 1114. In this case, the timing is strong circumstantial evidence of potential retaliatory intent on Defendant's behalf.

It appears true that even before Plaintiff's warning of intent to file a complaint, Defendant had failed to provide ice to Plaintiff.  Defendant claims he did not then know Plaintiff was entitled to ice and so did not provide it.  He was not motivated, and could

not have been motivated, to refuse ice based upon a complaint which had not yet been filed. However, Plaintiff alleges that the failure to provide ice continued after he filed the complaint in July and on into August and September and even after Defendant knew that Plaintiff was entitled to have ice chips. The fact that Defendant did not provide ice to Plaintiff after the complaint was filed and Defendant was provided notice that Plaintiff was entitled to ice creates is a genuine issue of material fact as to whether there is a causal connection between Plaintiff's complaint and Defendant's alleged ongoing failure or refusal to provide ice.

Further, inferences based on facts alleged by Plaintiff create genuine issues of fact whether there was a causal connection between the staff complaint and the Defendant's alleged course of conduct of engaging in various adverse actions against Plaintiff. Plaintiff asserts that when he told Defendant he was going to file a staff complaint, Defendant cursed at him. (Plaintiff's Decl. at ¶ 31, ECF No. 54 at 28.) Plaintiff also declares that Defendant stated that he was not picking up Plaintiff's sheets because Plaintiff was writing him up. (Id. at 28-29.) Furthermore, Plaintiff contends that during the July 5, 2009 cell search, Defendant confiscated Plaintiff's line paper, which, Plaintiff argues, was to be used to attach further information to a staff complaint. (Id.) Based on the actions alleged by Plaintiff, there are genuine issues of fact whether there was a causal connection between Defendant's course of conduct including the knowing denial of ice and Plaintiff's filing of the staff complaint.

Plaintiff has presented a genuine issue of material fact that Defendant's failure to provide ice was taken in connection with the protected conduct of filing a staff complaint. The Court recommends that Defendant's motion for summary judgment be denied with regard to the denial of ice retaliation claim.

c.   Cell Searches and Confiscation of Property

Plaintiff claims that the cell searches were retaliatory.  The facts with regard to the searches are not clearly stated. Defendant asserts that the searches advanced the legitimate correctional goals of the facility. Plaintiff asserts that they were conducted by Defendant and other correctional officers at Defendant's behest and resulted in his property being improperly confiscated in that the confiscations were not properly recorded and the officers recklessly handled and destroyed Plaintiff's property during the searches.

Defendant contends that if he searched Plaintiff's cell, and if he had confiscated Plaintiffs property, it only would have been because the confiscation served the legitimate penological purpose of enforcing the prison's rules and would have been properly documented. The Court is mindful of the deference owed to prison policies that are designed to maintain prison order and security; it is beyond dispute that routine cell searches and rules controlling what objects inmates may possess are valid and necessary for that purpose. See Hudson v. Palmer, 468 U.S. 517, 529, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984). Nevertheless, it is also well established that a facially legitimate security measure, such as a cell search or a confiscation of property, may be actionable under the Civil Rights Act if it is carried out for an improper motive, such as retaliation for engaging in constitutionally protected conduct. See Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1995). The burden is on the plaintiff to plead and prove the absence of any legitimate penological purpose in the act that he alleges was retaliatory. See Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995); Bruce, 351 F.3d at 1288; Uribe, 2011 U.S. Dist. LEXIS 133, 2011 WL 9640 at *18.

The Supreme Court has approved of requiring a plaintiff who alleges retaliation to

show that his exercise of constitutionally protected conduct was a "substantial factor" or "motivating factor" behind the state actor's adverse action when that action appears on the surface to be legally justified. Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 283-84, 287 (1977).

Defendant's argument on summary judgment that he engaged in a legitimate penological activity focuses exclusively on the need for cell searches and confiscation of property to ensure the safety of the institution. Plaintiff maintains that the property confiscated was lawfully obtained, not broken, or otherwise a threat to institutional safety. Regardless, the confiscation of property is not the only conduct material to Plaintiff's claim that Defendant retaliated against him for filing the staff complaint. Defendant's argument ignores the relevance of the search itself. Regardless of the outcome (i.e., confiscation or destruction of an inmate's property), a prison search can constitute an "adverse action" necessary to support a claim of retaliation. "Mt. Healthy and its progeny do not properly immunize defendants who abuse state authority by engaging in a retaliatory act, yet who, in the course of that act, happen to discover evidence incriminating the plaintiff." Wilson v. City of Fountain Valley, 372 F. Supp. 2d 1178, 1190 (C.D. Cal. 2004).

A plaintiff may support a claim of retaliation with evidence of the defendant's knowledge of the protected activity, the defendant's conduct and statements, and the timing of the allegedly retaliatory act. See Pratt, 65 F.3d at 807 ("timing can properly be considered as circumstantial evidence of retaliatory intent."); Bruce, 351 F.3d at 1289 (statements and suspect timing raised triable issue of fact regarding whether the defendants' motive behind plaintiff's gang validation was retaliatory). In moving for summary judgment in his favor, Defendant has ignored the searches themselves as an

independent basis of Plaintiff's retaliation claim. Here, Plaintiff's verified allegations in his complaint are sufficient to raise a triable issue of fact. Defendant does not dispute that he might have searched Plaintiff's cell several times after the staff complaint was lodged. Nor does Defendant dispute that several items of property were confiscated and destroyed during these searches. "[T]iming can properly be considered as circumstantial evidence of retaliatory intent." Pratt, 65 F.3d at 808. See also Bruce, 351 F.3d at 1288-89.

Further, inferences based on facts alleged by Plaintiff create genuine issues of fact whether retaliation was a motivating factor of the adverse actions. Plaintiff asserts that when he told Defendant he was going to file a staff complaint, Defendant cursed at him. (Plaintiff's Decl. at ¶ 31, ECF No. 54 at 28.) Plaintiff also declares that Defendant stated that he was not picking up Plaintiff's sheets because Plaintiff was writing him up. (Id. at 28-29.) Furthermore, Plaintiff contends that during the July 5, 2009 cell search, Defendant confiscated Plaintiff's line paper, which, Plaintiff argues, was to be used to attach further information to a staff complaint. (Id.) Based on the actions alleged by Plaintiff, there are genuine issues of fact whether Defendant's course of conduct including cell searches was motivated by retaliation, or based on legitimate penological interests.

Together these facts could lead a reasonable juror to conclude that Plaintiff's verbal complaint to Defendant and his threat to file a 602 inmate appeal were "substantial factors" or "motivating factors" in Defendant's search of Plaintiff's cell and his confiscation of property. See Brodheim, 584 F.3d at 1266, 1271 (summary judgment on retaliation claim denied where there was evidence that the defendant had warned the plaintiff prisoner "be careful what you write"); Valandingham v. Bojorquez, 866 F.2d

1135, 1137-38 (9th Cir. 1989) (concluding that plaintiff's showing of the existence of a genuine issue of material fact as to his retaliation claim precluded the granting of summary judgment in favor of the defendant).

In light of the allegations presented by Plaintiff, Defendant's arguments that he was only carrying out normal institutional procedure is not enough to entitle him to entry of summary judgment in his favor. "[P]rison officials may not defeat a retaliation claim on summary judgment simply by articulating a general justification for a neutral process, when there is a genuine issue of material fact as to whether the action was taken in retaliation for the exercise of a constitutional right." Bruce, 351 F.3d at 1289.

There is a genuine dispute of fact as to whether Defendant conducted cell searches and confiscated Plaintiff's property in retaliation for Plaintiff's protected conduct. Because there is a genuine issue of material fact, summary judgment is inappropriate and should be denied with regard to this claim. Fed. R. Civ. P. 56(a).

## V.    CONCLUSION AND RECOMMENDATION

Based on the foregoing, the Court HEREBY RECOMMENDS that:

1. Defendant's motion for summary judgment (ECF No. 49) be GRANTED IN PART;

2. Judgment be entered in favor of Defendant on Plaintiff's Medical Indifference and Retaliation claims with the exception of Plaintiff's claims that he (i) was denied ice as authorized by his medical chrono and (ii) subject to cell searches and had property confiscated in retaliation of filing a staff complaint against Defendant; and

3. The case remain open pending resolution of Plaintiff's remaining retaliation claims.

23

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within **fourteen** (14) days after being served with these Findings and Recommendations, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   March 2, 2015                    /s/ *Michael J. Seng*

                                         UNITED STATES MAGISTRATE JUDGE